**ALBERT Y. DAYAN**
Attorney at Law
80-02 Kew Gardens Rd., #902
Kew Gardens, N.Y. 11415
Tel: (718) 268-9400
Fax: (718) 268-9404

**By ECF:**

July 8, 2021

The Honorable Denis R. Hurley
United States District Court Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

                Re:    *United States v. Jack Cabasso et. al.*
                        *Criminal Docket No. 19-CR-582 (DRH)*

Dear Judge Hurley:

      Please accept this letter-motion as Mr. Cabasso's respectful request for modification of the conditions of his release pending trial for several critical and constitutionally required aims including, but not limited to, essential preparation for a complex trial and for gainful employment to earn monies to support his legal defense and an adequate living. The reason we ask Your Honor to address this motion is to become familiar with the underlying facts and argument by Defendant for efficiencies and expediency in upcoming motions and other procedural matters in this case, which will undoubtedly come before Your Honor for resolution and have significant commonality of facts and issues.

      Based upon a change of circumstances in this case as a result of the information gleaned from the voluminous and protracted discovery gradually *--but we suggest tactically--* produced by the government up to this date, the complexities brought about by hundreds of governmental administrative regulations that will demonstrate the government's own complicity on the subject of this Indictment, the complex motion practice anticipated in this case that will clearly and undoubtedly refute the government's premature, echoed and unsubstantiated allegations of "one big fraud", and, of course, the natural and unforeseen frustrations and delays caused by Covid-19 in obtaining the necessary information for trial preparation, we submit the following factors for Your Honor's consideration to modify Mr. Cabasso's current conditions for pretrial release.

*Bail Reform Act*

      Absent government's and pretrial office's consent, when a defendant moves for modification of pretrial conditions for his release, the court must consider three factors: "(1) the length of the pretrial detention; (2) the extent to which the prosecution is responsible for the delay of the trial; and (3) the strength of the evidence upon which the pretrial detention was based." United States v. Roseto, 1995 WL 350815 (S.D.N.Y., June 9, 1995)(Memorandum Decision)(citing United States v. Millan, 4 F.3d 1038, 1043 (2d Cir. 1993)(citations omitted)).

*Length of Pretrial Detention Was Never Anticipated to be Protracted*

      At the initial finding of pretrial detention and the subsequent modification of conditions for Defendant's release on consent by the parties, no one could have anticipated at the time the extent of Covid-19's effect on our professional and personal lives, the extraordinary complexity and the voluminous project of this case, and that the government's initial *--but now clearly controverted--*

The Honorable Denis R. Hurley
United States District Court Judge
Eastern District of New York
July 8, 2021
Page 2

overreach in their spewed allegations of "one big fraud" would further affect the complexity of defending this case and would cause such an extraordinary delay still for several years to come.

It has already been 20 months of Mr. Cabasso's pretrial conditions of detention and discovery is still in the early stages. Regarding the length of pretrial detention, there is no doubt that the longer the pretrial detention the more likely the denial of due process. Typically, this factor weighs in favor of the moving defendant. See, e.g., United States v. Gonzales-Claudio, 806 F.2d 334, 341 (2d Cir. 1986)("detention that has lasted for fourteen months and, without speculation, is scheduled to last considerably longer, points strongly to a denial of due process").

*Prosecution Responsible for the Delays in Discovery*

Approximately 4 years since the investigation leading to this case and 20 months since the case began, the Government with its unlimited resources including 13 agencies, several prosecutors and dozens of paralegals, and multiple investigators are still struggling with producing discovery at their own snails type tactical method. It is, therefore, by no fault of Mr. Cabasso, who has suffered the underlying due process consequences. Regarding the reason or "responsibility" for delay factor, the court will consider information relating to pretrial events such as motions for continuance, discovery disputes, complexity of the case and other matters relating to the progress (or lack thereof) of the case. See, e.g., Roseto.

*Grossly Inaccurate Statements on Evidence Upon Which Pretrial Detention and Subsequent Modification was Based*

It is not the intent of the undersigned to litigate each of the Government allegations in this matter and expose our defense as this is not the appropriate forum to do so and it may take volumes in writing. Rather we desire to limit the general discussion to the current well-defined, gross and untenable inaccuracies represented by the prosecution in this case upon which the Court relied in determining the terms of Mr. Cabasso's conditions of bail and rulings on other substantive and procedural aspects of this case.

The Government alleges that Mr. Cabasso's company Aventura Technologies Inc. ("Aventura"), formed in 2000, *"manufactured nothing."* The Government asserts Aventura was selling PRC security cameras to *"unknowing"* U.S. Government agencies as U.S. origin manufactured with not $1 of legitimate business of any kind whatsoever in Aventura's existence. The Government mantra *"one big fraud from inception"* has been the reoccurring theme during every court appearance. Confirming their narrative, on November 7, 2019, at the preliminary hearing the Court asked the Government for purposes of determining bail: *"During its investigation did the Government find out whether Aventura conducts business that's outside of the alleged fraudulent activity?"* The Government prematurely and negligently responded, *"No, Your Honor. In fact the allegation essentially in the complaint is that Aventura's business is fraudulently entirely."*

But, the Rule 16 document production in this case now clearly and convincingly demonstrate the following; (a) in contrast to government's allegations that Aventura's proceeds was mostly about fraudulent sales of goods that compromised national security, Aventura and its employees were primarily involved in the "services" industry such as sustainment, maintenance, on-and -off site installation and consulting; (b) Aventura had no business with the U.S. Government of any kind whatsoever as alleged or

The Honorable Denis R. Hurley
United States District Court Judge
Eastern District of New York
July 8, 2021
Page 3

otherwise until many years into its corporate formation and existence; (c) 17 of the Company's 33 employees were employed for services contracts only, none of which related to "product sales"; (d) Aventura had several multi-year, seven-figure "service" contracts with the FBI/Department of Homeland and IRS, the same investigating agencies in this case who had completely vetted Aventura prior to dealing with its personnel for the services contracts and with whom Mr. Cabasso met with regularly and openhandedly discussed every aspect of his company's services; and, (e) there was absolutely no $88 million of security camera equipment sales to the U.S. Government or other customers of Aventura as is erroneously alleged by the prosecutors in this case. In reality product sales, particularly cameras, were de minimis over the company's existence and the U.S. government sales were a small portion of the Company's total sales.

Furthermore, in stark contrast to prosecutor's echoes that "Aventura manufactured nothing", the Rule 16 document production in this case now clearly and convincingly demonstrate that Aventura had factories, factory workers, software developers and engineers. It possessed components for manufacturing the products it sold from its New York facilities over its entire existence, which represented the majority of Aventura product revenues as reflected in the books and records and invoices. During its many years of operation, Aventura manufacturing facilities were visited and examined by multiple government agencies on multiple occasions including those involved in the investigation and prosecution in this case. Over the 13-year period, Aventura's production plant was visited by government agencies for product and factory examination and acceptance tests, inclusive of product proprietary for products not even available in PRC or elsewhere. The many manufacturing work stations at Aventura, including manufacturing parts, manufacturing tools and components were observed, examined and inventoried by the same agents and prosecutors in this case at the time of Mr. Cabasso's arrest.

Moreover, on the subject of manufacturing at Aventura, on information and belief, the Government did interview former Aventura employees, government employees contracting with Aventura, private customers of Aventura and related contractors, all of whom accordingly must have advised the investigative agencies in this case of the legitimate and genuine manufacturing operations at Aventura. Assuming, of course, the witnesses were honest and not pressured by the prospect of not getting a cooperation agreement.

In following of the Government mantra in this case, in the midst of the alleged "one big fraud and manufactures nothing" the Government must have disremembered that in 2011, they (the same prosecuting office) were conducting an *"aggressive"* and thorough FBI multi-year investigation and prosecution into Mr. Cabasso in his association with Aventura with a complaining and cooperating witnesses and disgruntled ex-business partners of Mr. Cabasso, who were insiders, of Aventura. The investigation consisted of testimonial evidence, physical surveillance, surreptitious recordings, Aventura corporate financial books and records and Aventura vendors and other customers. All the same evidence that is the basis of the current indictment.

Based upon its previous investigation the Government indicted Mr. Cabasso in 2011, which trial resulted in an acquittal on all 6 counts. Not one witness, including insiders from Aventura whom the government thoroughly believed and relied upon in their case in chief, nor the government prosecutors in that case, levied any accusation parallel to the present indictment even after combing through Aventura

The Honorable Denis R. Hurley
United States District Court Judge
Eastern District of New York
July 8, 2021
Page 4

books, records and, employees and customers when the company had already been in business for over a decade.

Now comes the Government with an epiphany in attempting to rewrite the Aventura company history. The government's current position is simply not sustainable when compared to the position they assumed in 2011, and lacks plausible deniability by the documents they now produced. Accordingly, the statement, *"the allegation essentially in the complaint is that Aventura's business is fraudulently entirely,"* and mantra *"Aventura manufactures nothing,"* are egregiously inaccurate by the government's own account from the 2011 investigation and trial. As I stated to Your Honor in our last status conference, the Government has overreached.

Further, what the prosecutors omit, perhaps due to lack of knowledge on the subject, is that the same U.S. government agencies who purport to be victims in this case, were complicit, deeply motivated, involved and overtly and pervasively solicited and purchased from and others the same PRC security cameras and related equipment and infrastructure in the **$10s of billions** that they now accuse only Mr. Cabasso of selling to them without their knowledge.

It is to such extent, that 1,000s of PRC security camera equipment and related products from 100s of providers including GE, Honeywell, Panasonic, Sharp, Stanley, Toshiba, Bosch, Motorola, United Technologies and others were and are solicited for sale by the U.S. Government on (a) U.S. government procurements, (b) U.S. government contracts, (c) U.S. government requests for quotes, (d) U.S. government requests for proposals, (e) U.S. government solicitations, U.S. government websites, ALL of which are "controlled" by the U.S. Government through the entire period in question and through the current date. All as evidenced on U.S. Government CBP import records and corresponding U.S. General Services Administration correspondence, filings and websites.

Exacerbating the matter, the PRC security camera companies referenced by the Government in the complaint and indictment were even being solicited by the investigating Department of Defense Agencies by their own name and on a **"sole source basis" as the only products acceptable to the Government,** giving rise in this case to the defenses of Entrapment by Estoppel and/or the Public Authority Defense.

The hypocrisy of this case extends beyond the government's overt and tacit acknowledgements. In a matter which could have and should have been addressed administratively as it was done in other similarly situated matters, the government went out of its way to ignore CBP's and GSA's standard operating policies and the obvious exculpatory facts, including books and records from Aventura confirming its compliance over the years and put Mr. Cabasso, a highly respected industry executive, and his successful 20-year company out of business.

Instead, the government arrested Mr. Cabasso and his completely innocent and unaware of anything at Aventura wife. They arrested almost the entire management force for the obvious reason of breaking them into cooperation with threats of twenty years in prison. They seized or encumbered the assets of Aventura and the Cabassos' for the obvious reason of taking away their purse to adequately defend themselves with an armada of qualified attorneys and experts that is required in this case. They left Aventura and the Cabassos with no ability to satisfy their debts with creditors who are now

The Honorable Denis R. Hurley
United States District Court Judge
Eastern District of New York
July 8, 2021
Page 5

aggressively pursuing the Cabassos. They seized the company's physical and electronic books and records necessary to operate. They advised Aventura customers not to pay their bills due and owing even though unrelated to the allegations in this case. They prohibited Mr. Cabasso from speaking with customers or employees of Aventura. They made statements to vendors, customers and the press making Mr. Cabasso and Aventura toxic. And, they imposed excessive bail restrictions, which ostensibly negate any possibility of Mr. Cabasso to earn a livelihood and prepare himself for the trial of and for his life. All of the above, give the appearance of trampling Mr. Cabasso's due process rights, essentially by the prosecutors in this case likewise assuming the roles of the judge and jury.

The contorting of legitimate business practices and the underlying facts and figures, from the actual numbers reflected in the documents produced in discovery, followed by inaccurate interpolation as the cover story for the *"one big fraud"* and *"Aventura manufactured nothing,"* are an untenable position and misleading, which the Court used in determining the original conditions of bail and are now used to utterly crush Mr. Cabasso with isolation and deprivation of all his resources from being used for a more effective defense to stand up against a formidable opposition such as the government and its infinite resources in this case. What innocent man would have a shot of an acquittal under these draconian pretrial conditions.

*Bail Conditions*

After spending 2 months incarcerated at MDC Brooklyn, the original order setting conditions of release and bond was entered on January 06, 2020, wherein Mr. Cabasso was released into home detention on a $3,000,000.00 bond secured by property and $200,000.00 cash bail, secured from friends and relatives and surrendered his passport and is being supervised by the U.S. Pretrial Services. Mr. Cabasso has been fully compliant with all the terms of his bond since he was released into home confinement on January 7, 2020.

On or about September 22, 2020, this Court, with the consent of the Government and U.S. Pretrial Services, modified the initial bail conditions ("The Modified Order") by further allowing Mr. Cabasso to leave his residence and provide services, sustainment and maintenances to Aventura's former clients. The same business following the Government's fact pattern never existed. The Modified Order only allowed Mr. Cabasso limited travel outside his home address at 1 Lady Janes Way, Northport, New York to his business office located at 48 Mall Drive, Commack, New York, on a daily basis from 8:00 am to 6:00 pm. He is permitted to go no place else outside home and office.

While the Modified Order permitted Mr. Cabasso to provide sustainment and maintenance services to customers as he had done for the previous 20 years with its customers, it did not include travel to customers as required to logically perform the physical work. Previously, Aventura and Mr. Cabasso had the financial resources and personnel to perform the fieldwork, which no longer exist. Now it's only Mr. Cabasso, debts of the company and service, sustainment and maintenance that require a physical presence at customer sites with site surveys, visual inspections and post contract performance on a 24/7 basis.

More importantly, the modification of Mr. Cabasso's pretrial conditions for release are necessary to attend a litany of regularly scheduled and unscheduled meetings with teams of lawyers, forensic

The Honorable Denis R. Hurley
United States District Court Judge
Eastern District of New York
July 8, 2021
Page 6

experts, investigators, accountants and professionals both in EDNY and SDNY on an abundance of complex matters with millions of both physical and electronic documents. The current restrictions make this virtually impossible both physically and financially.

*Not a Risk of Flight Risk*

The Government in reaching cited Mr. Cabasso's "ties" to the People's Republic of China (PRC), where extradition is practically impossible. As evidenced by Mr. Cabasso's passport, now in the custody of the Government if reflects he has only visited the PRC on occasion for business over the years and prior to the arrest had not been there for years. For reasons beyond this letter, but known to the Government, Mr. Cabasso's safety in Communist China would be questionable at this time.

Mr. Cabasso is 63 years old with absolutely no resources at his disposal, is and always has been since birth a citizen of the United States and not of Asian descent directly or indirectly. Mr. Cabasso, his parents and their 17 siblings, with 100s of children and grandchildren are all U.S. born and U.S. Citizens and raised in New York. Mr. Cabasso's wife, parents, grandparents and their children are all born and raised in New York. Mr. Cabasso's ties to the United States span more than a century with no ties to foreign countries.

Accordingly, the Government representation as a current basis for the conditions of bail based upon alleged ties to a Communist country is grossly inaccurate and not supported by the facts. Additionally, the Government has Mr. Cabasso's passport, in addition to which a visa would be required for the PRC. Mr. Cabasso has lived in the same house for the last 33 years, which the family owns. His ties to the local community, extend back generations and are apparent, while ties to the PRC are non-existent.

Mr. Cabasso has been traveling regularly in the EDNY and SDNY to attorneys, medical and professional appointments for the last 1-1/2+ years and has been fully compliant with the present conditions of bail. Accordingly, Mr. Cabasso poses no risk of flight and there is no precedent to think otherwise.

*Conditions of Pre-Trial Release Can Secure Mr. Cabasso's Return to Court*

Mr. Cabasso has never missed a court date in this or any other proceedings and there is no precedent to think otherwise. For the Government to summarily state there are no conditions of pre-trial release to secure Mr. Cabasso's return to Court is unfounded with no regulatory purpose. Its only consequence is to deny him a fair trial by putting unnecessary pressure on Mr. Cabasso and crippling his ability to earn a living to sustain himself, pay his legal bills and defend himself.

*Conclusion*

Accordingly, the facts set forth justify the relief sought. There are "significant" changes in circumstances from the initial bail appearance to the present. Mr. Cabasso (a) has no ties to the PRC as evidenced by his passport, which is now in the possession of the Government, (b) is not a flight risk and never missed a court date, (c) has already been unnecessarily and punitively detained for 20 months already and the length of pretrial detention was never anticipated, (d) the prosecution is responsible for the delays in the matter, (e) has demonstrated his compliance with pretrial supervision over the last 1-1/2+ years, (f) has a $3,000,000.00 bond secured by property and $200,000.00 cash and (g) needs to be able to prepare for trial and sustain himself and family.

The Honorable Denis R. Hurley
United States District Court Judge
Eastern District of New York
July 8, 2021
Page 7

      Your Honor, the case and the extended 20 months so far and home detention has taken not only a financial toll on Mr. Cabasso and his family but a heavy physical, psychological one on him and others close to him. It will continue to do so on a case, which will extend for some time between the complexities and backlogs associated in the Court system, none of which are the fault of Mr. Cabasso who suffers the unintended repercussions.

*Relief Sought*

      (a) Mr. Cabasso be permitted to travel in the EDNY and SDNY the same as all other defendants in this case.

Respectfully submitted,

**/s/ Albert Dayan**
Albert Dayan, Esq.