

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

AFM
F. #2018R01047

*271 Cadman Plaza East
Brooklyn, New York 11201*

December 17, 2024

<u>By ECF and Email</u>

Steven S. Guttman
United States Probation Officer,
Eastern District of New York

      Re:    <u>United States v. Jack Cabasso
               Criminal Docket No. 19-582 (JMA)</u>

Dear Officer Guttman:

      On September 24, 2024, the United States Probation Department disclosed its Presentence Investigation Report ("PSR") with respect to defendant Jack Cabasso in the above-captioned case. The PSR notes that "the offense involved tax fraud, mostly on the part of Jack Cabasso." PSR ¶ 31. The government writes in order to provide further information in this regard, for the Probation Department to consider in connection with any possible supplements or amendments to the PSR.

      In summary, Jack Cabasso used Aventura to evade the payment of more than $1 million worth of federal tax liability. Cabasso did so by ensuring that his substantial compensation moved through intermediaries that were not subject to garnishment by the Internal Revenue Service ("IRS").

      As set forth in the table below, Jack Cabasso accrued extensive tax liability between 1989 and 2007:

### 1. Jack Cabasso's Unpaid Federal Taxes

Jack Cabasso accrued the following federal tax liability, which remained unpaid on the dates when the applicable collections statutes of limitation expired.[1]

| Tax Year | Nature of Taxes | Amount of Tax, Fine and Penalties When Collections Statute of Limitations Expired |
|---|---|---|
| 1989Q1, 1989Q2, 1989Q3, 1998Q4, 1990Q1, 1990Q2 and 1990Q4 | Payroll taxes for a business prior to Aventura | $168,827.68 |
| 1991Q1 | Payroll taxes for a business prior to Aventura | $30,238.49 |
| 1991Q2 | Payroll taxes for a business prior to Aventura | $70,775.90 |
| 1999 and 2007 | Income Tax | $880,679.89 |

Notably, Jack Cabasso's 1999 tax liability, which was assessed on March 10, 2008, arose from the discovery by the New York County District Attorney's Office of a secret offshore account he owned in Guernsey. That account contained $1.5 million in proceeds from a securities fraud to which Cabasso pled guilty in 2000, see PSR ¶ 73.[2]

---

[1] U.S. federal taxes are generally subject to a ten year collections statute of limitations, meaning that the IRS has ten years to collect the taxes from the date on which they are assessed. See generally "Time IRS can collect tax," available at https://www.irs.gov/filing/time-irs-can-collect-tax.

[2] The government requests that the PSR's recitation of Jack Cabasso's criminal history be supplemented to reflect Cabasso's laundering of fraud proceeds in an offshore bank account, and his subsequent agreement to forfeit those proceeds. See The New York Times, "The Law's Arm Gets Longer," May 13, 2001, available at https://www.nytimes.com/2001/05/13/business/investing-diary-the-law-s-arm-gets-longer.html (reporting on discovery of Cabasso's fraud proceeds in a Guernsey bank, and Cabasso's subsequent agreement with the New York County District Attorney's Office to forfeit those funds).

### 2. *Aventura's Indirect Compensation of Jack Cabasso through Frances Cabasso*

A central aspect of the charged scheme was the defendants' pretense that Frances Cabasso, rather than Jack Cabasso, was the chief executive of Aventura. In line with that fiction, Aventura paid what were effectively Jack Cabasso's wages to Frances Cabasso (who filed her taxes separately). Thus, between 2003 and 2018, Aventura paid Frances Cabasso approximately $5 million in salary, according to the company's federal and state tax returns and payroll records.

This pattern changed notably after the expiration of the final relevant collections statutes of limitations in 2018. In January 2019, Jack Cabasso opened a bank account for the first time. And in January 2020, Aventura's payroll processor filed its Form W-2 for 2019, which for the first time reflected employment income paid by the company to Jack Cabasso.

### 3. *Aventura's Indirect Compensation of Jack Cabasso through His Corporate Credit Card*

Although Aventura paid no money into any bank account in Jack Cabasso's name before 2019, he drew extensive compensation from the company through Aventura's corporate credit cards. Between 2010 and 2018, Cabasso charged approximately $936,000 to his Aventura credit cards.

Many of those expenses appeared to be personal in nature. They included:

- Approximately $90,000 in cash advances, including approximately $3,700 withdrawn from ATMs at casinos in Las Vegas over the course of four two-day periods between 2011 and 2015.

- $17,124.51 in charges at Bloomingdale's between in or around August 2010 and January 2018;

- $14,112 in charges at Whitman Coin and Jewelry, a Suffolk County jeweler, in or around and between February 2007 and June 2018;

- $4,453.63 in charges at Chanel on or about March 31, 2017;

- $2,712.91 in charges at Gucci in or around and between November 2010 and October 2016;

- $3,600 in tuition expenses at Touro College on or about and between January 8, 2014 and March 18, 2015;

- $ 3,553.50 in payments for a bar exam preparation course on or about March 31, 2014, several months before one of the Cabassos' children graduated from law school; and

- $3,086.45 in charges at a jewelry store in Cairo, Egypt on or about March 10, 2017.

3

Jack Cabasso did not reimburse Aventura for these payments. On Aventura's tax returns, charges to Jack Cabasso's corporate credit card were classified as expenses and deducted from revenue. Jack Cabasso's own tax returns reported "consulting income" in amounts that were substantial but lower than the relevant credit card payments.[3]

### 4. Aventura's Indirect Compensation of Jack Cabasso through Third-Party Payees

In addition to compensating Jack Cabasso through his corporate credit card and through payments to Frances Cabasso, Aventura made numerous loans and outright payments to third parties for the Cabassos' benefit. These included:

- A loan of $450,000 towards a home purchase by one of the Cabassos' sons, enabling the son to make a cash purchase, obtain a subsequent mortgage, and repay Aventura;

- Millions of dollars in loans to third-party home buyers, the interest on which Frances Cabasso collected; and

- Approximately $750,000 paid outright for a yacht that Jack and Frances Cabasso used for pleasure and sometimes offered for charter. Aventura ultimately sold a half-share of the yacht (i.e., a stake worth approximately $375,000) to Frances Cabasso for $125,000.

### 5. Jack Cabasso's Lies to the IRS

The effect of this conduct was to place Jack Cabasso's substantial compensation beyond the reach of the IRS, evading payment on Cabasso's million-dollar tax bill.

Jack Cabasso carried out this scheme intentionally, as evidenced by his repeatedly lying to the IRS, and causing Aventura to lie, regarding his true position at Aventura and the fact that the company was paying him. For example:

- Aventura's New York State tax returns never listed Jack Cabasso as an employee.

- Jack Cabasso's federal tax returns described his income as self-employment derived from consulting, and provided his home address as the business location, when in fact Cabasso worked for Aventura at the company's corporate location.

- On October 12, 2006, in an effort to collect a portion of Cabasso's unpaid taxes, an IRS revenue officer visited Aventura and spoke with Cabasso, who refused to discuss his position at Aventura, told the revenue officer that he did not know who Aventura's officers were, and said that he was supported by Frances Cabasso. Five

---

[3] For example, Jack Cabasso reported $726,317 in income for the years 2010-2018, while benefiting from $936,000 in corporate credit card payments.

days later, on or about October 17, 2006, Jack Cabasso's lawyer told the revenue officer that Jack Cabasso was a "consultant."

- On November 2, 2006, the revenue officer again spoke with Jack Cabasso, who said that he did not know who Aventura's principals or officers were apart from Frances Cabasso, that he had invested no money in the company, and that Aventura paid him using checks which he cashed at Aventura's bank. He added that Frances Cabasso paid all of their bills through an account in her name.

- On or about November 7, 2006, Jack Cabasso submitted a financial statement to the IRS indicating that he had no assets and no ability to pay his outstanding tax liability. The financial statement described Jack Cabasso as a self-employed consultant working for Aventura.

- On or about October 10, 2018, a revenue officer again visited Aventura and personally served a demand for payment on Jack Cabasso. Cabasso falsely asserted that he was not a full-time employee of Aventura but only did consulting work, and refused to say how he was paid. According to IRS records, Cabasso also asked "several times" about the expiration date for the collections statute of limitations, which was then approaching.

Jack Cabasso received multiple levy notices from the IRS, both at Aventura and at his home, and communicated with Aventura employees about those notices.[4] On or about November 25, 2008, Jack Cabasso sent to defendant Jonathan Lasker a letter for an Aventura employee to send to an IRS revenue officer in the employee's name. The letter asserted, in response to an IRS levy notice, that Aventura was "not in possession, custody or control of any sums due or owing to Jack Cabasso. Mr. Cabasso does not earn a weekly wage and at present is

---

[4] An IRS Notice of Levy, Form 668-W, serves to direct the recipient that "[Y]ou must turn over to the IRS any property you have that belongs to the person levied against." See "What if I get a levy against one of my employees, vendors, customers or other third parties?" available at https://www.irs.gov/businesses/small-businesses-self-employed/what-if-i-get-a-levy-against-one-of-my-employees-vendors-customers-or-other-third-parties

5

not due any commissions… Accordingly, we have complied with the Notice of Levy as instructed and have not refused or intend [sic] to refuse your demand for payment."

                              Respectfully submitted,

                              BREON PEACE
                              United States Attorney

By:   /s/
        Alexander Mindlin
        Kayla Bensing
        Assistant U.S. Attorneys
        (718) 254-7000

cc:    Clerk of the Court (JMA) (by ECF)
       Barry S. Zone, Esq. (by email)